# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| RAYMONT GRADY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-cv-393-JMB |
| | ) | |
| ST. LOUIS CITY JUSTICE CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon review of an amended complaint filed by plaintiff

Raymont Grady, Jr., an inmate at the United States Penitentiary, Big Sandy, in Inez, Kentucky.

For the reasons explained below, the Court will dismiss this action at this time, without

prejudice, pursuant to 28 U.S.C. § 1915A.

### Background

At the time of the events giving rise to his claims, plaintiff was being held at the St. Louis

City Justice Center as a federal pretrial detainee.[1] He filed the original complaint against the St.

Louis City Justice Center. He claimed his federally-protected rights were violated in connection

with a January 5, 2020 incident in which he was attacked by unknown inmates. In support of his

claims, he alleged he was attacked after no one responded when he pressed the call button, and

that although he was injured in the attack, a corrections officer named Williams made him walk

---

[1] Review of publicly-available records in this United States District Court show that on December 19, 2019, plaintiff was indicted on charges of being a felon in possession of a firearm. *U.S. v. Grady,* No. 4:19-cr-1037-SRC-1 (E.D. Mo. 2019). Plaintiff was held in federal custody as of that date. He pleaded guilty, and on January 5, 2021 was sentenced to serve 52 months imprisonment, such sentence to be served consecutively with any sentence imposed in *State v. Grady,* No. 1722-CR03309. This Court takes judicial notice of the foregoing records. *See Levy v. Ohl,* 477 F.3d 988 (8th Cir. 2007) (district court may take judicial notice of public state records); *United States v. Jackson,* 640 F.2d 614, 617 (8th Cir. 1981) (citations omitted) (district court could "take judicial notice, whether requested or not . . . of its own records and files . . .").

to the medical department. Treatment providers initially told plaintiff he had an ankle sprain, but an x-ray later revealed fracture. Plaintiff received medical treatment at St. Louis University Hospital, and later at the jail, he was housed in an area where he had to travel the stairs and use a top bunk. His request for a wheelchair was denied, and members of jail staff refused to carry things for him. He was not given plastic bags to use to wrap his cast while showering, and the cast became wet and fell off. Plaintiff had to wait for a replacement. After the cast was removed, plaintiff was not given a boot, or the physical therapy he believed was necessary. Plaintiff sought monetary and injunctive relief.

Upon initial review, the Court determined that the complaint was subject to dismissal, and gave plaintiff the opportunity to file an amended complaint. In so doing, the Court clearly explained, *inter alia*, the necessity of alleging facts in support of the claims alleged, and facts explaining how each named defendant was personally involved in or directly responsible for harming him. Plaintiff has now filed an amended complaint, which the Court reviews pursuant to 28 U.S.C. § 1915A.

## Legal Standard

Pursuant to 28 U.S.C. § 1915A(a), this Court "shall review before docketing if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Upon such review, this Court shall dismiss the complaint, or any portion thereof, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be

granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

### The Amended Complaint

Plaintiff filed the amended complaint against the City of St. Louis,[2] Corizon, Dr. Fe Fuentes, and corrections officers Unknown O'Zier, Unknown Williams, Unknown Moody, and Unknown Jones. Plaintiff sues the individual defendants in their official and individual capacities. He alleges as follows.

On January 5, 2020, plaintiff was assaulted by "unknown inmates." Plaintiff had "pressed the jail's emergency button but was ignored by working unit officers Unknown Moody and Unknown Jones." After the attack, Williams made plaintiff walk to the sally port (where he was to exit the facility to be taken to the hospital), even though plaintiff said he could barely walk. Plaintiff was taken to St. Louis University Hospital, and diagnosed with a broken ankle, a broken nose, a gash on his eyebrow that required stitches, and swelling. After returning to the jail, plaintiff was placed in the infirmary. Dr. Fuentes "prematurely released" him after only three days, and refused to issue him a bottom bunk pass. As a result, plaintiff had to use "the top bunk in a cell with another disabled inmate." Dr. Fuentes and O'Zier denied plaintiff a wheelchair, and O'Zier refused to carry things for plaintiff on unspecified occasions.

"All working officers" refused to repair the handicap shower, and refused to give plaintiff plastic bags to cover his cast in the shower. On February 9, 2020, plaintiff was given a new cast, and despite his complaints, it was not removed until September 11, 2020. Plaintiff complained, and was moved to a cell on an upper tier, where he had to travel the stairs.

---

[2] In a motion filed on December 20, 2021, plaintiff asked this Court to correct the docket sheet to reflect that, in the amended complaint, he named the City of St. Louis as a defendant, not the St. Louis City Justice Center. (ECF No. 13). However, the Court has already updated the docket to reflect the current defendants, based upon the amended complaint. Additionally, the fact the case caption still reflects the name "St. Louis City Justice Center" has no bearing on the identity of the actual defendants. Plaintiff's motion will therefore be denied as moot.

Next, plaintiff identifies his specific claims against each defendant. He claims Moody and Jones were "careless with the emergency speaker in an emergency situation that could have been prevented." He states he sues Williams for "his carelessness with an inmate that was injured." Plaintiff states he sues O'Zier "for her cruel and careless actions of making me carry own property and denying me a wheelchair, which would have made carrying my property much easier and kept me from walking on foot with cast over broken ankle." Plaintiff sues Dr. Fuentes for denying him a wheelchair and a "mandatory bottom bunk pass." He states he sues the City of St. Louis and Corizon for failing to train their employees.

## Discussion

The Court first considers plaintiff's official capacity claims against the individual defendants. Naming a government official in his or her official capacity is the equivalent of naming the entity that employs him or her. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). In this case, plaintiff's allegations establish that Moody, Jones, Williams, and O'Zier are corrections officers employed at the St. Louis City Justice Center. However, the St. Louis City Justice Center is not an entity that can be sued under § 1983. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992). Additionally, as explained, *infra,* the amended complaint fails to state a claim of municipal liability. Plaintiff's allegations establish that Dr. Fuentes is a Corizon employee. However, as explained, *infra,* the amended complaint fails to state a claim against Corizon. The Court therefore concludes that the amended complaint fails to state official capacity claims against Moody, Jones, Williams, O'Zier, and Dr. Fuentes. The Court now addresses plaintiff's individual capacity claims against these defendants.

Plaintiff claims Moody and Jones are liable to him because they failed to respond when he pushed the call button, and plaintiff was attacked by "unknown inmates." Having carefully

reviewed and liberally construed the amended complaint, the Court concludes that plaintiff's allegations do not state claims of constitutional dimension.

The Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). Therefore, "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006) (citing *Bell,* 441 U.S. at 535). A detainee can establish that a governmental act is punitive in nature by demonstrating an express intent to punish. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 907 (8th Cir. 2020), *Butler,* 465 F.3d at 344. In the absence of an express intent to punish, a detainee can show "that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Stearns,* 957 F.3d at 907. *See Butler,* 465 F.3d at 344.

When, as here, "the governmental duty to protect at issue…is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and well-being," deliberate indifference is the appropriate standard of culpability. *Butler*, 465 F.3d at 344-45 ("deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety."). Therefore, plaintiff herein must show that he faced a substantial risk of serious harm, and Moody and Jones failed to respond reasonably to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also A.H. v. St. Louis County, Missouri,* 891 F.3d 721, 726 (8th Cir. 2018) (applying *Farmer's* deliberate indifference standard to claims that officials

failed to protect a pretrial detainee from suicide); *Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015) (". . . we have used Farmer's subjective measure of deliberate indifference to evaluate Fourteenth Amendment claims by pretrial detainees against prison officials."). Importantly, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Stearns,* 957 F.3d at 908 n 5 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

In this case, plaintiff's allegations do not establish that he faced a substantial risk of serious harm. Plaintiff alleges he was attacked on January 5, 2020 by an unspecified number of "unknown inmates." Plaintiff does not allege that the unknown inmates had previously threatened him or that he had any prior conflict with them, nor does he allege they were generally known to be violent or volatile. Plaintiff also fails to allege that there was any reason he himself was particularly vulnerable to attack. Instead, it is clear from plaintiff's allegations that the attack was a single, isolated incident perpetrated by persons unknown to him. Even if plaintiff had established that he faced a substantial risk of serious harm, he alleges no facts permitting the inference that Moody or Jails failed to respond reasonably to it. Instead, plaintiff bases his claims solely upon Moody and Jones's failure to respond when he pressed the call button. Plaintiff does not allege Moody or Jones were aware of any potential danger or that they intentionally ignored the call; only that they failed to respond. Such inaction demonstrates, at most, that Moody and Jones were negligent. As noted above, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Stearns,* 957 F.3d at 908 n 5 (quoting *Lewis*, 523 U.S. at 849). *See Cordrey v. Lamb*, 2018 WL 1427695, *4 (S.D. Ill. Mar. 22, 2018) (determining that a corrections officer's failure to respond to a panic button despite having the duty to do so did not suggest deliberate indifference and amounted, at most, to

negligence). The Court therefore concludes that plaintiff fails to state claims of constitutional dimension against Moody and Jones.

The Court now turns to plaintiff's claims against O'Zier and Williams. Plaintiff alleges Williams made him walk to the sally port after the attack, even though plaintiff told him walking was difficult. He alleges O'Zier made him carry his own property at unspecified times, and denied him a wheelchair after his ankle was placed in a cast. He claims Williams and O'Zier were careless, and that O'Zier's refusals made it more difficult for him to move about while carrying his belongings. Plaintiff does not allege he was unable to ambulate or move about as needed without a wheelchair, nor does he allege facts permitting the inference that Williams or O'Zier's conduct caused him to be unable to move around as needed. Instead, his allegations establish only that that moving about was less comfortable or convenient than it could have been. At most, plaintiff's allegations establish that Williams and O'Zier were negligent. However, such allegations are below the threshold of constitutional due process. *See Stearns,* 957 F.3d at 908 n 5 (quoting *Lewis*, 523 U.S. at 849).

The Court now addresses plaintiff's claims against Dr. Fuentes. Plaintiff claims Dr. Fuentes deprived him of adequate medical care when she "prematurely released" him from the infirmary after three days, refused to issue him a bottom bunk pass, and denied him a wheelchair. These claims are analyzed using the deliberate indifference standard. *See East v. Minnehaha County*, 986 F.3d 816, 820 (8th Cir. 2021) (citing *Jackson v. Buckman,* 756 F.3d 1060, 1065 (8th Cir. 2014)) (the deliberate indifference standard applies to inadequate medical care claims brought by pretrial detainees under the Fourteenth Amendment and by convicted inmates under the Eighth Amendment); *Butler*, 465 F.3d at 344-45 ("deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with

adequate food, clothing, shelter, medical care, and reasonable safety."). Therefore, to establish Dr. Fuentes's liability, plaintiff must demonstrate that he had a serious medical need, and Dr. Fuentes was deliberately indifferent to it.  *See East,* 986 F.3d at 820.

Having thoroughly reviewed and liberally construed plaintiff's allegations against Dr. Fuentes, the Court concludes they fail to state a claim of constitutional dimension. While plaintiff has demonstrated that he had an objectively serious medical need, he has alleged nothing permitting the inference that Dr. Fuentes disregarded it. Plaintiff makes no attempt to explain why he believes his discharge from the infirmary was premature. He alleges nothing tending to show that being discharged caused him to go without adequate medical care or adversely affected his condition, nor does he allege facts permitting the inference that Dr. Fuentes ever refused to provide adequate medical care. While it is apparent that plaintiff believes he should have been allowed to stay longer in the infirmary, his allegations do not demonstrate that Dr. Fuentes's discharge of him amounted to disregard of his serious medical needs. The same is true of plaintiff's assertions concerning Dr. Fuentes's failure to issue him a bottom bunk pass and a wheelchair. Plaintiff does not allege that using a top bunk and being deprived of a wheelchair caused him anything other than inconvenience or discomfort. Plaintiff does not allege he was unable to ambulate and needed a wheelchair to get around, nor does he allege he was unable to get on and off the top bunk. Instead, plaintiff can be understood to allege that his lack of a bottom bunk pass and a wheelchair caused him inconvenience or discomfort. At most, plaintiff's allegations against Dr. Fuentes amount to negligence or a mere disagreement with Dr. Fuentes's treatment decisions, neither of which state claims of constitutional dimension. *Stearns,* 957 F.3d at 908 n 5 (quoting *Lewis,* 523 U.S. at 849) (negligence is below the threshold of constitutional due process); *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th

Cir. 2008) ("a mere disagreement with treatment decisions does not rise to the level of a constitutional violation").

Plaintiff also includes conclusory assertions that unidentified officials failed to make repairs or comply with the Americans with Disabilities Act, failed to give him plastic bags to cover his cast in the shower, waited too long to remove his cast, and moved him to an inconveniently-located cell where he had to travel the stairs. Plaintiff's assertions are simply nothing more than conclusory statements devoid of factual support. The Court previously explained to plaintiff the necessity of alleging facts in support of his claims, and will not now assume facts he has not alleged. *Stone*, 364 F.3d at 914. Additionally, plaintiff does not allege that any named defendant was directly involved in any of the incidents, nor does he attempt to identify the responsible person or persons. To state a claim under § 1983, plaintiff must plead that a government official has personally violated his constitutional rights. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citing *Iqbal*, 556 U.S. at 676).

The Court now addresses plaintiff's claims against the City of St. Louis. A municipality can be sued directly under 42 U.S.C. § 1983. *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 690 (1978). To prevail on such a claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

10

Here, as discussed above, plaintiff's allegations fall short of alleging a violation of his federally-protected rights. There can therefore be no claim against the City of St. Louis for any alleged failure to train leading to such a violation. Additionally, plaintiff offers only his own conclusory allegations that the City of St. Louis failed to train its employees, statements this Court is not required to accept as true. *See Iqbal,* 556 U.S. at 678. As a result, the Court concludes that plaintiff fails to state a plausible *Monell* claim against the City of St. Louis.

The Court now considers plaintiff's claims against Corizon. "A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). Here, plaintiff's allegations do not establish that Dr. Fuentes or any other Corizon employee violated plaintiffs' federally-protected rights. There can therefore be no claim against Corizon for any alleged failure to train leading to such a violation. Additionally, plaintiff offers only his own conclusory allegations that Corizon failed to train its employees, statements this Court is not required to accept as true. *See Iqbal,* 556 U.S. at 678. As a result, the Court concludes that plaintiff fails to state a plausible claim for relief against Corizon.

For all of the foregoing reasons, the Court concludes that this action must be dismissed at this time, without prejudice. This is not a situation in which plaintiff should be given a second opportunity to amend his pleadings. First, it is clear that the claims plaintiff seeks to bring are simply not claims of constitutional dimension, which cannot be cured by amendment. Additionally, in in previously granting plaintiff leave to amend, the Court clearly explained the necessity of alleging facts in support of his claims and of demonstrating the personal

involvement of the defendants, and will not now assume facts he has not alleged. *See Stone*, 364 F.3d at 914.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Subpoena Evidence (ECF No. 11) and Motion to Correct the Docket Sheet (ECF No. 13) are **DENIED** as moot.

Dated this 21st day of January, 2022.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE

12